Good morning. May it please the Court, my name is Linda Bell. I'm an Assistant Federal Public Defender from the District of Nevada and I represent the Appellant Roger Chambers. This case is an action under 28 U.S.C. 2254 arising from Mr. Chambers' conviction for first degree murder. During the trial in Mr. Chambers' case, a jury instruction was used defining premeditation, which this Court has found in Polk v. Sandoval to violate the due process requirements of Henry Winship in Sandstrom v. Montana that each and every element of the crime's charge be proven and instructed. Because of that, Mr. Chambers' case should be reversed for a new trial. Counsel, let me ask you a question about the exhaustion issue which is raised on the cross. Certainly. There is a line of cases from the Supreme Court that seems to say that exhaustion requirements are not satisfied if the claim is raised for the first time in a procedural context where the state court will not consider it in the absence of some special important reasons, that that is not fair presentation of the peoples and Pitchess v. Davis. I'm not sure if I'm pronouncing those correctly. What's your response to the argument that those cases require a conclusion here that the petition for an extraordinary writ does not satisfy exhaustion? Those cases involved presentation through unusual procedural means in which the courts made a summary denial. Because not only can exhaustion be perfected through fair presentation, but if the court actually passes upon the issue, then the claims will be considered exhausted. So here, Mr. Chambers filed his extraordinary writ with the Nevada Supreme Court. The Nevada Supreme Court, as the district court noted, has the ability to look at those extraordinary writs under the Nevada Constitution, Article 11. But it's an extraordinary remedy that's at the discretion of the court. They don't have to decide it the way they would in appeal, for example. That's correct. But in this case, they did actually issue a denial on the merit. Well, how do we know that? Didn't they just say, we've considered it and we're not satisfied that this court's intervention for extraordinary relief is warranted? I mean, just a single sentence? There are actually two sentences that both say that they denied on the merit. I may be missing a crucial one. First, Nevada Rule of Appellate Procedure 22 gives the Nevada Supreme Court the option to hear the writ or to transfer it to the district court. It is very common, and in fact, in the Blair case, the Nevada Supreme Court said, this should go to the district court for decision. You should bring this in the district court. And that's actually, in my time doing these cases, what I have seen most commonly, the Nevada Supreme Court says, you filed this writ. This should properly be heard in the district court first. So they actually enter the procedural default in the order. That is not what happened in Mr. Chambers' case. They say it's a proper person petition. This is the EOR on page 26. Yes, I have it. But they have considered it, and they are not satisfied. Their intervention is warranted. And then they drop an additional footnote that says, we have considered all proper person documents filed or received in this matter, and we conclude that the relief requested is not warranted. So they never take the option given to them under NRAP 22 to transfer the relief. They simply say that the relief is not warranted. They deny it, essentially, on the merits. And because of that, this is very similar to the case of Green v. Lambert. In fact, this case, I believe, is even clearer than Green. And Green, the petitioner there had filed a motion for reconsideration and brought his claim for the first time to the And as a result, the Court made some change in the language of their order. Here we have the Court actually saying that they did consider what he filed and that they believed that relief was not warranted. So these claims should clearly be exhausted, because the Court did take the opportunity to review the claims. This is a real issue of what the Court means. I understand we have got to interpret  The place we had to take from the district court's view, you had to go exhaust three more remedies. You chose not to do it at the district court, but to move the Supreme Court of the State of Nevada for this extraordinary writ. That's correct. So your issue that you bring to us now is whatever they did was sufficient for exhaustion. You don't have to go through the usual process. Now, this particular extraordinary writ apparently is extraordinary, or they wouldn't call it that. That is, there's a way of getting to the Supreme Court under certain circumstances without going through the trial court, et cetera, to get up there. Now, that is, I understand, the background. The wording is, we have considered the petition on file herein. The petition on file herein is for an extraordinary writ, and we are not satisfied this Court's intervention by way of extraordinary relief is warranted at this time. Now, it seems to me they're passing on a procedural issue. At this time means maybe later, but you don't need an extraordinary writ now. If that's true, then the Court has never passed on the merits. It's only passed on the procedure of whether they will pass on the merits, and they're no, not now. That seems to me to be a logical reading of what they've said here. Why do you feel it's different? Why? What do we find? What is the wording here that says we've reviewed the merits and we deny on the merits? Well, there's two things. There's the footnote that's saying that they have reviewed all of the documents, not just he filed this writ, we're not looking at it because it's procedurally defective, but they had actually considered, they used the word considered twice, and the merits were not warranted. But considered the documents for what reason? Read the rest of the footnote. We conclude the relief requested was not warranted. There's nothing in that footnote that says they have decided the merits. They've only, they have considered that the relief requested, an extraordinary writ, is not warranted. I don't see how that footnote helps you. You go ahead. This isn't an easy issue. Well, if you look to the Blair case, I think that that makes a good distinction between what the Nevada Supreme Court normally does and what they did in this case. Because in Blair, the Nevada Supreme Court had this language, but they go on to say that this case should properly be brought before the Nevada District Court, that this should go to the trial court, because we're not going to hear it because it should go down to the trial court. The Supreme Court has the ability to do that, and they do it frequently. Okay. They can do that. They can do that. Suppose they had said nothing but petition denied. Then I think we would have a problem. Then you'd have a real problem under Savelli. Okay. What more, then, do they need to say, other than denying the writ? The wording itself is denial of writ. Are you saying, you're not saying that if they said nothing, that means that they're to go back in the district court? But what you are arguing is that they could have sent it back to the district court and didn't, and therefore they passed on the merit. But you've conceded that if they had said nothing, then it wouldn't be any type of indication that they're telling them they could have gone back to the court and didn't do it, therefore they passed on the merit. You see the problem I've got? That's correct. That's what the line of Castile, Rodigin, those cases all say when it is denied without comment, just denied, then we can assume that there's some procedural, they're denying it basically for a procedural reason. Here we have more than that, and we have less than what they do when they are denying it for a procedural reason, as they did in Blair. So this is like Green. Except in Green, the state court said a little bit more than was said here. First of all, it stated specifically the nature of the claim. I mean, they went back and they amended their opinion and said something along the lines of, well, now he's claiming that his rights were violated in thus and such a way, but because of the way in which we've resolved the other claims, we don't have to, you know, deal with that, the way we might respond to an alternative argument that is presented to us sometimes. But they clearly responded to it by saying, we understand your claim, we're thinking about your claim, the nugget of your claim, the merits of your claim. It just seems that they said a little bit more. In Green, though, they never actually came out and denied or really made a denial. As a result, they added that additional language to the opinion, but it was somewhat ambiguous. Here we actually have the Nevada Supreme Court saying that they did consider it. They specifically say that they reviewed all of the pro se documents and that the relief requested was not warranted, which is a denial on the merits. This is very similar to Harris v. Superior Court, where the California Supreme Court denies, will come up with a summary denial and that's not considered a procedural bar because the California Supreme Court will say it's procedurally barred if that's their intention. And the Nevada Supreme Court also has a practice of imposing a procedural bar if that is their intention. And for whatever reason, they chose to treat Mr. Chambers' case differently than they normally do. And so because of that, it should be considered exhausted. How long have they had this extraordinary writ process? Is this an old process or is it new? Very old. It's part of the Nevada Constitution. And are there any cases that explain whether this is a vehicle, procedural vehicle or substitute vehicle? Is there cases that they have told us what this writ is for? The Constitution actually lists writs, including writs of habeas corpus. In the language of the Constitution, a provision of Article 11. And in Nevada Rule of Appellate Procedure 22, when they are discussing those provisions, they specifically allow for the possibility that the court may take things when they choose. And there's the Gum case and the 8th Judicial District case from the Nevada Supreme Court that talk about it being an extraordinary remedy for which they have discretion and generally reserved for times when there's no plain, speedy and adequate remedy in the ordinary course. That's true. But in this case, they did decide to deny it without entering any sort of procedural default. They made a merits ruling that his relief was that he wasn't entitled to relief. May I say the remainder of my time for rebuttal? I'm not sure it was you, but some attorney friend, your client, decided to go with extraordinary remedy rather than go to the district court. Because they feared that if they went to the district court, there would be procedural defaults against them, so it would be a waste of time. Is that the theory? Yeah. Mr. Chambers had sort of a complicated procedure, as these cases all seem to be. His procedural history was fairly complex, and his issues included one issue, which is not before the court today, that was a complaint about what the Nevada Supreme Court had done, and issues that had been presented to the district court, but then were not presented in a federal nature to the Nevada Supreme Court. So there were some fairly complex reasons for him making the decision to use the extraordinary writ, which were explained in great detail in the writ that he filed with the Nevada Supreme Court, which may well be the reason that they chose to enter the order that they did. But what procedural defaults do you think they were fearing, that they went to the district court as opposed directly to the Nevada Supreme Court? At the point that he returned with the extraordinary writ, if he would have been facing potential defaults on timeliness and successive petitioning. Okay. Thank you. May it please the Court and Counsel, my name is Robert Whelan. I'm a Senior Deputy Attorney General employed by the Office of the Attorney General of the State of Nevada. I have the privilege and pleasure of representing the respondents in this particular matter. To just touch very briefly on the exhaustion issue as reflected in our brief, our answering brief, it is our position that the claim is not exhausted for the reason that Counsel, if the order of the Nevada Supreme Court is ambiguous, and can be read either to be a consideration on the merits of the claim or some kind of procedural bar, why shouldn't we, if it is ambiguous, why shouldn't we read it in favor of the petitioner that the court actually did consider the claims, having said they read all his materials and so forth? Well, first of all, under Williams v. Craven, the burden is upon the petitioner to plead and prove exhaustion. If they can't prove it, that's the burden. Well, they've given us what they've given. I mean, the order is what it is. In that sense, they've carried their burden. They've said, look, we presented it to the Supreme Court of Nevada, and they decided it. And here's the decision. So then it's a, I mean, that's their proof, if you will. And then the question is, well, what does it mean? And I guess what I'm troubled by, to be candid, is that their claim on the merits is, seems under Polk to be a good claim. And it's quite painful to look at a good claim and say, well, you know, here's this procedural bar. If we have to, we have to. That's the law, but. I respectfully disagree on both counts, Your Honor. The first point I disagree with Don is that they have carried their burden. If the best that they can come forward with to this court is something that the court characterized itself as ambiguous, that's not proving that the fact that there has been exhaustion. The second aspect that I respect. Well, in green, we said that the court's action was ambiguous. It was, the court did more in green than was done here, and certainly something slightly different. But we still have to resolve that ambiguity. And you're saying, well, it doesn't matter, just resolve it in our favor. But why? Well, I think another way reasonably to look at it, if you look, he filed an ex parte application for leave to appear in proper person. The footnote appears to me, well, we're denying that. We've decided we're not going to intervene. You haven't met the burden to intervene for our intervention in this case. So we're not doing anything. And besides which, there's Interest 34724. But does it mean, sir, does it mean we've thought about it and you lose? I don't think they addressed the merits at all. I don't think they considered the merits, particularly in light of the fact that Interest 34724, which provides for the fact that the Petition Fruit of Habeas Corpus comprehends and takes the place of all other common law and statutory remedies. There's that. Counsel mentioned Blair. Obviously, the, and the statement by the Nevada Supreme Court there, obviously, the Nevada Supreme Court's aware of what's going on. They said, we're not going to intervene. Go down and do it the way you're supposed to. Well, it doesn't say that. You're reading that into it. So that's why I say to, for either of you to win, we have to read something into it. Well, this is a simple one. Well, we have to assume, excuse me, Your Honor, we have to assume that the Nevada Supreme Court's aware of the laws of the State. We can't just sit there and We don't have to assume that they know how to write clearly for the reader, though, which is a different question. Well, this is a simple proceeding of Habeas Corpus. That's correct, Your Honor. Wouldn't the rule of lenity, which applies in criminal proceedings, wouldn't that be an appropriate principle to give consideration to it? Because this man is in prison for life without a parole. And on the substance issue, that in itself is a default deficit. Well, I don't see that. Maybe you ought to get a new trial. Well, no, Your Honor. The rule of lenity hasn't got anything to do with whether or not the Nevada Supreme Court decided that there was extraordinary circumstances. In fact, you have to assume that they didn't because they decided not to intervene in this case. Well, Judge Graber, I believe, was suggesting that how are we going to interpret the language of the Nevada Supreme Court? Are we going to interpret it as a fact that they Are you going to give it to the Petitioner? Or do you give the interpretation to the government? What principles should guide us determining how we're going to interpret this? Well, Your Honor, I think the answer is in our brief. I think they have the burden to plead and prove it. They haven't done it, so they haven't met their burden. If I may continue with respect to the jury instruction, counsel commented that the jury instruction simply by and of itself because of the Polk decision warrants reversal in this particular case. The respondents disagree because in Boyd v. California, which relies on Estelle v. McGuire, we're considering the instructions in the entirety. Now, this Court, or the Ninth Circuit has in Polk, found a problem with the premeditation and deliberation instruction that was given in this case. Some problem? The Ninth Circuit's had pretty definite problems and stated them. Well, there's a problem, but the problem is not resolved simply by saying, oh, we've got Polk, and therefore we win. In Boyd v. California I think the concern we have is that, at least the concern I have, is that there appears to be an issue back here that should be looked at. Now, we have rules on how to get to that. One of them is exhaustion. So your position is that the extraordinary petition to the Supreme Court does not get to exhaustion. Okay. So, in your view, what should we do? What should our opinion be? Well, they haven't exhausted. Now they have to explore under Rhines whether or not there's good cause, whatever that amounts to, for the failure to exhaust, and perhaps consider sending it back to the District Court to see if there's cause to let it go back to State Court for a stay in abeyance. So you would have us enter an opinion vacating the judgment of the District Court and directing the District Court to direct the petitioner to the State Court to exhaust? To see if there's good cause, whatever that standard is, under Rhines, to see whether or not he should be allowed to go back yet again. That would be his third State petition. That's the problem. That's the third State petition. Well, Nevada is entitled to assert its procedural bars. As counsel mentioned, it would be barred at least by NRS 34-726, the one-year statute of limitations, which this Court has upheld. NRS 34-810, either you could have and should have done it previously or you're trying to raise the issue again. Procedural bar. Or there's a possibility if NRS 34-800 latches and there's an additional State procedural bar. Let's assume for sake of argument that we think that the premeditation instruction deserves to be looked at. All right. Is it your view there's no way we're going to get to that, to that exhaustion so we can look at it in the Federal Court, see if the Federal Constitution has been violated because of what took place in the extraordinary writ? Well, as Your Honor has recognized, there are ways by which issues can be presented and by ways they can't. And the State has its interest in finality as well. But what you're saying is, I understand correctly, the State would take the position that if they went back to the trial court to exhaust, the State would object. Obviously. Yes, we would. But contrary to counsel's position in her reply brief, that's not tantamount to saying that, you know, they get to go back with impunity. There are rules. And the rules of the road apply to them as well. If I may continue, not knowing how the Court's going to rule on the exhaustion issue, with respect to the jury instruction, jury instruction number 23, there were instructions in this case that were given in this case that differentiate this from Polk. As I was commenting with respect to Estelle v. McGuire and Boyd v. California, the Court has to look. The premeditation instruction, though, here was the same one that was given in Polk, right? That's correct. Okay. What are the other instructions that were given here that were not given in Polk that cure the defects that were identified in Polk? I would direct the Court's attention to jury instruction number 26, which appears at 180 of the excerpt of the record. And that instruction talks about the nature and the extent of the injuries coupled with the repeated blow, coupled with repeated blows, may constitute evidence of willfulness premeditation and deliberation. The point being, with respect to ---- It sounds like a comment on the evidence. But that's another problem. What it is, is, and with all due respect to the Court, we respectfully disagree with the Polk decision. But it is binding on us. We concede. And it's binding on this Court. However, although we disagree with the analysis, the analysis requires the instructions to be looked at as a whole. And so jury instruction number 26, which is not challenged at all, and therefore this Court must consider as a perfectly appropriate instruction, says that the injuries coupled with repeated blows, not just a single blow, but repeated blows, may constitute evidence of willfulness premeditation and deliberation. Now, if you take that in the context of the instructions that were given, the self-defense instructions and those sort of things, and the fact that the instruction, jury instruction 23, dealing with premeditation, talks about the state of mind prior to the actual act of killing. Well, it almost makes it worse. One way to look at it is that it once again takes it out of the context of premeditation into the nature of the act itself and doesn't really require the jury to think at all about premeditation in the normal sense. I mean, that is one way to look at it. Well, if you ascribe to it the common and ordinary means, and particularly if you ascribe it to the meanings in Biford that are expressed in the Biford decision, deliberation is the process of determining upon a course of action to kill as a result of thought, including rating the reasons for and against the action and considering the consequence of the action, coupled with premeditation as it's defined. Premeditation is a design, a determination to kill distinctly formed in the mind by the time of the killing. It's very clear that the instructions, particularly those with dealing with self-defense, the other instructions that I point out in the brief, show that there is, in fact, something more that's required. And the jury met this and it was explained to the jury that premeditation and deliberation meant exactly what it says in Biford. I would point to the court additionally to the evidence. If this court should find that the instructions as a whole fail to convey to the jury or there's a, excuse me, there's a reasonable likelihood that the instructions, that jury instruction 23 was construed in an unconstitutional matter, there's still overwhelming evidence in this case of premeditation and deliberation as defined in Biford. First of all, we note the defensive wounds to Mr. Chacon's hand, the gaping wound to his arm, the bruises on his arm, the entire length of his left arm, to the extremities. There were 17 stab wounds administered to the victim in this particular case. There were three clustered. Again, all of that is the act itself and not what preceded the act. Well, it's evidence under Nevada law of the individual's state of mind, Your Honor. And there were three tightly aggregated stab wounds here. There was a cluster, I think it was six wounds up here at the jugular. The pathologist testified that there were two separate sets. The fact that the wounds were clustered together indicated that the victim was relatively still with respect to the assailant. There were, of course, the two penetrating wounds that caused the lungs, that transected the lung lobes. There are the defendant's own statements given, and I asked the court to read the transcript provided in the excerpt to record with respect to the defendant's own statement how this happened. I sliced him first. He put the Do Not Disturb sign up. He took time afterwards to actually stage and choreograph the circumstance. One of the most telling pieces of evidence in this particular case, his claim is that he got angry with the victim in this case because the victim was supposedly smoking heroin on one of his tools, his knives. He makes a big deal about that. He's angry about that in the first instance. But the point of the thing is, is the investigators talked and they found blood spatters underneath the knives on which the heroin was supposed to be spoken. That indicated that the knives were placed there. He called down to the hotel room for an extended stay so that he could get more time to think about what's going on. Those are all circumstances that he expressed in his own statement, and that shows premeditation and deliberation under Nevada law in this instance. There's a whole plethora of evidence in there. Look at it. He said, nobody touches my tools. The scene was staged. He waited four to five hours before going to the hospital, and the wound that he claimed was a defensive wound, the pathologist testified it was a defensive wound, and it wasn't even really consistent with the way he said how the fight started. Thank you. Thank you, counsel. We used a lot of your time with questions, and you may have two minutes for rebuttal. Thank you. I'd like to just address the issue of the error in this case and how this instruction impacted Mr. Chambers. The Nevada Supreme Court essentially makes fact findings throughout their opinions in this case that there was really no premeditation and deliberation, and in fact, that's our other claim is that there was insufficient evidence of first-degree murder. They say the killing was not planned in advance. It resulted from an emotionally charged confrontation, and if you look at Mr. Chambers' statements, he repeatedly said that he was defending himself. He didn't mean to do it. And he says that over and over again to everybody he talked to. He was at the hospital within two hours after this happened, and he was very upfront with them in explaining what had happened. This case is much worse in terms of error than the Polk case, where Mr. Chambers had a gun and he had threatened to kill the man he shot about a month before, said he was going to shoot him. There was absolutely zero evidence that there was any intention by Mr. Chambers to do anything to Mr. Chacon before he walks in. Mr. Chacon is cooking heroin on his chef's knife, which is entirely consistent with the physical evidence. I'm sorry to interrupt, but before your time is out, what is your response to counsel's argument that in conjunction with other instructions not given in the Polk case, the jury would have been left with a different impression of its required findings? I think that assertion is completely incorrect. I think instruction number 26 is absolutely awful. It was objected to at trial. I think if anything, it just makes it worse because then it says, well, just because there are multiple stab wounds that you can infer premeditation, willfulness, and deliberation, and it really takes the Polk or the bad Kaslan instruction and magnifies it because it condenses it down to simply the intent, what the prosecutor said. It's just the raising your hand and wielding the knife, which is very similar to what the prosecutor said in Polk, which eliminates the jury having to do any thinking at all about the elements of the separate and distinct elements of this offense. If there are no other questions from my colleagues, your time has expired. Thank you. Thank you, counsel. The case just argued is submitted, and we'll take about a 10-minute break.
judges: Wallace, Graber, Timlin